# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

FATHI ALSOOFI,

    Plaintiff,

v.                                                   Case No. 09-CV-12869

THYSSENKRUPP MATERIALS NA, INC.,

    Defendant.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this case brought under the Family Medical Leave Act ("FMLA"), Plaintiff asks the court to find that a secret six-week trip to Yemen for his sister's wedding is a covered act under the FMLA, despite the fact that Plaintiff requested FMLA leave in order to care for his ill mother, who remained in Michigan during the trip. The court finds that it is not, and will therefore grant the "Motion for Summary Judgment" filed by Defendant ThyssenKrupp Materials NA, Inc.[1]

## I. BACKGROUND[2]

---

[1] After reviewing the briefs, the court finds no reason to conduct oral argument on this narrow issue of law. *See* E.D. Mich. LR 7.1(e)(2). Accordingly, the court will cancel the hearing scheduled for April 21, 2010 and enter judgment in favor of Defendant.

[2] As Defendant points out in its Reply Brief, Plaintiff's statement of facts is deficient in several respects. First, Plaintiff failed to abide by this court's Scheduling Order, which provides that, in responding to a proffered Statement of Facts, Plaintiff should specifically accept or reject each of Defendant's facts. (9/2/09 Scheduling Order at 6-7.) The Scheduling Order states, "Any proffered fact in the movant's Statement of Material Facts that is not specifically contested will, for the purpose of the motion, be deemed admitted." (*Id.* at 7.) Moreover, Plaintiff's Statement of Facts fails to provide any citation to the record in support of the proffered fact, instead relying upon counsel's bare assertion, which is insufficient both under Federal Rule of Civil Procedure 56 as

Plaintiff began working for Defendant in May, 2006.  (Pl.'s Fact # 1.)  In May, 2008, Plaintiff requested leave under the Family Medical Leave Act (FMLA) from July 3, 2008 to August 18, 2008 to take care of his sick mother.  (Pl.'s Fact # 3; Def.'s Ex. 7.)  Plaintiff's mother was usually cared for by his youngest sister, but she was scheduled to be married in Yemen and would be unavailable to care for her mother during that time.  (Pl.'s Fact # 6.)  Plaintiff's brother was scheduled to travel to Yemen with their sister because, according to their customs, she was required to travel with a male family member.  (Pl.'s Fact ## 12, 17.)

In the days just before their trip, Plaintiff's brother was scheduled to undergo emergency back surgery.  (Pl.'s Fact # 12.)  He was unable to travel, so Plaintiff took his place in accompanying their sister to Yemen.  (Pl.'s Fact # 13.)  As Plaintiff's brother was now unable to care for his mother, their older sister stepped in to fill that role; she was, however, in her third trimester of pregnancy.  (Pl.'s Fact ## 14-15.)

While he was in Yemen, Plaintiff spent most of the time attending to his sister's wedding.  (Pl.'s Dep. at 76.)  He stayed in the city of Aden and saw some family and friends.  (*Id.* at 80.)  He communicated with his sister and his mother who were still in Michigan, but did not speak to any doctors while in Yemen or help to make any medical decisions.  (*Id.* at 76, 113, 132.)  His mother was hospitalized on at least two occasions while Plaintiff was in Yemen.  (*Id.* at 111-112.)

---

well as the court's Scheduling Order.  Nonetheless, after reviewing the briefs, the court concludes that the material facts are essentially undisputed.  Accordingly, the court will include in its Background section those facts which are material to its analysis, or are provided for context, regardless of whether Plaintiff technically complied with the court's Scheduling Order.

During this time, Defendant was told by some of Plaintiff's co-workers that Plaintiff was not caring for his mother but was, in fact, in Yemen attending his sister's wedding. (Buchawa Aff. at ¶ 9, Def.'s Ex. 1.)

Plaintiff returned to the United States on August 12, 2008, and returned to work on August 14, 2008. (Pl.'s Fact # 20; *see* Buchawa Aff. at ¶¶ 11-13.) When Plaintiff returned to work, he was asked where he was during his leave. He initially lied, saying that he was with his mother in the hospital, but later admitted that he had traveled to Yemen to accompany his sister for her wedding. (Buchawa Aff. at ¶¶ 12-13.)

Based on the information provided, Defendant conducted an investigation into Plaintiff's FMLA leave. (Ramey Aff. at ¶ 8, Def.'s Ex. 9.) Plaintiff provided Defendant with copies of his passport and travel documentation. (Ramey Aff. at ¶ 5.) Plaintiff's travel documentation confirmed that Plaintiff left the United States on July 3, arrived in Yemen on July 4, and returned to the United States on August 12. (*Id.* at ¶ 6.) Defendant's investigation concluded that Plaintiff had requested FMLA leave to care for his mother but had, in fact, traveled to Yemen. (*Id.* at ¶ 7.) Plaintiff was terminated on September 9, 2008, "because he obtained his leave of absence for fraudulent reasons." (*Id.*)

Plaintiff initiated this lawsuit on July 8, 2009, in the Wayne County Circuit Court, alleging that Defendant terminated his employment in violation of the FMLA. Defendant removed the case to this court on July 21, 2009.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not "'weigh the evidence [to] determine the truth of the matter but[, rather,] to determine whether there is a genuine issue for trial.'" *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party discharges its burden by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter,* 369 F.3d 906, 909 (2004) (citing *Celotex*, 477 U.S. at 325). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton,* 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587 (1986)). Summary judgment is not appropriate when

4

"the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

### III.  DISCUSSION

The FMLA entitles an eligible employee to as many as twelve weeks of leave during any twelve-month period "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C).  The statute defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Id.* at § 2611(11).  And, while the FMLA does not define the phrase "to care for," the Department of Labor has described when an employee is needed "to care for a family member" under the FMLA:

> (a) The medical certification provision that an employee is "needed to care for" a family member or covered servicemember encompasses both physical and psychological care. It includes situations where, for example, because of a serious health condition, the family member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is unable to transport himself or herself to the doctor. The term also includes providing psychological comfort and reassurance which would be beneficial to a child, spouse or parent with a serious health condition who is receiving inpatient or home care.
>
> (b) The term also includes situations where the employee may be needed to substitute for others who normally care for the family member or covered servicemember, or to make arrangements for changes in care, such as transfer to a nursing home. The employee need not be the only individual or family member available to care for the family member or covered servicemember.

29 C.F.R. § 825.124.

There are two distinct theories for recovery under the FMLA: (1) the "entitlement"

5

or "interference" theory arising from 29 U.S.C. § 2615(a)(1); and (2) the "retaliation" or "discrimination" theory arising from 29 U.S.C. § 2615(a)(2). "The [FMLA] creates 'prescriptive and proscriptive employee rights.'" *Taylor v. Union Inst.*, 30 F. App'x 443, 452 (6th Cir. 2002) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir.1998)); *see Arban v. West Pub. Corp.*, 345 F.3d 390, 400-01 (6th Cir. 2003). Plaintiff's claim rests on allegations of retaliation for, and interference in, exercising his rights under the FMLA.

## A. Retaliation Claim

Under Sixth Circuit precedent, the court examines claims of retaliation based on a plaintiff's exercise of FMLA rights in the same manner as other employment retaliation claims. More specifically, the Sixth Circuit has noted:

> [I]n *Skrjanc v. Great Lakes Power Service Company*, 272 F.3d 309 (6th Cir. 2001), this court held that the *McDonnell Douglas* burden shifting framework should be applied to FMLA retaliation claims that are based upon indirect evidence. . . . Under *McDonnell Douglas*, a plaintiff relying upon indirect evidence must first establish a prima facie case. The employer then has the burden of articulating a legitimate nondiscriminatory reason for the adverse employment action. Finally, the plaintiff must show that this nondiscriminatory reason was in fact pretextual and that unlawful discrimination was the real reason for the adverse action.

*Gibson v. City of Louisville*, 336 F.3d 511, 513 (6th Cir. 2003) (citations omitted).[3] "[T]o succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Spurlock v. Peterbilt Motors Co.*, No. 01-6544, 2003

---

[3]Plaintiff asserts that the *McDonnell Douglas* approach does not apply to his "retaliation" claim because the retaliation claim should be treated as a claim for "interference." (Pl.'s Resp. at 11.) This assertion, however, relies on nonbinding case law from the Ninth Circuit, rather than the direction from the Sixth Circuit cited above.

WL 463491, at *1 (6th Cir. Feb. 19, 2003) (quoting *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1207 (11th Cir. 2001)); *see King v. Preferred Tech. Group*, 166 F.3d 887, 891 (7th Cir. 1999). Thus, in the absence of direct evidence, the court employs the familiar *McDonnell Douglas* burden-shifting analysis.

To establish a prima facie case of retaliation under the FMLA, a plaintiff must establish: (1) that he engaged in a statutorily protected activity; (2) that the employer knew of his protected activity; (3) that he suffered an adverse employment action; and (4) that a causal connection existed between his protected activity and the adverse employment action. *Skrjanc*, 272 F.3d at 314; *see also Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 463 (6th Cir. 2001); *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). If a prima facie case is established, the employer must produce a legitimate non-discriminatory reason for its actions, upon which event a plaintiff must come forward with specific evidence of pretext. Nonetheless, a plaintiff bears the ultimate burden of proving discriminatory retaliation by a preponderance of evidence at trial. *See Agee v. Northwest Airlines Inc.*, 151 F.Supp.2d 890, 896 (E.D.Mich. 2001); *King*, 166 F.3d at 892 ("When a plaintiff alleges a retaliatory discharge under the FMLA, the plaintiff must similarly establish that the employer engaged in intentional discrimination."). Defendant argues that it is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff has failed to establish that he engaged in a statutorily protected activity. (Def.'s Br. at 9.) The court agrees.

It is undisputed that Plaintiff requested FMLA leave from July 3, 2008 to August 18, 2008 in order to care for his mother. (Def.'s Ex. 5.) It is undisputed that Plaintiff's mother had a "serious health condition" as defined by the FMLA. (Def.'s Ex. 7.) It is

7

also undisputed that Plaintiff traveled to Yemen between July 4, 2008 and August 12, 2008. (Def.'s Ex. 7,8; Pl.'s Resp. at 11.) Plaintiff contends that his travel to Yemen was a protected activity under the FMLA due to circumstances surrounding his youngest sister's wedding and his mother's ailment. (Pl.'s Resp. at 16).

Specifically, Plaintiff states that, "according to his religious beliefs and customs, it is unacceptable for women to travel long distances unaccompanied by a male chaperone, especially to Yemen." (Pl.'s Resp. at 4.) Plaintiff's brother was scheduled to travel with his youngest sister to Yemen for her wedding while Plaintiff was going to stay home with his mother. Plaintiff asserts, however, that just before the trip, his brother required emergency back surgery. (Pl.'s Resp. at 4.) Thus, Plaintiff was "forced" to take his brother's place and travel to Yemen with his youngest sister. His older sister, who was pregnant at the time, stayed in Michigan to take care of his mother. (Pl.'s Resp. at 4.) As noted above, Plaintiff has failed to provide sufficient factual support for most of these assertions. Even if Plaintiff had provided support, however, his claim would still fail as a matter of law.

Plaintiff intimates that by traveling to Yemen with his youngest sister, he was providing psychological support for his mother under 29 C.F.R. § 825.124(a) and, moreover, he was substituting for others[4] under 29 C.F.R. § 825.124(b); therefore, he

---

[4] As an initial matter, there is an inherent flaw with Plaintiff's argument. The regulation provides that "caring for others" includes situations "where the employee may be needed to substitute for others who normally care for the family member." 29 C.F.R. § 825.124(b). However, in traveling to Yemen, Plaintiff was "substituting" for his brother, who was meant to escort his sister, rather than "substituting" for his sister who normally cares for his mother. Nonetheless, the court will address Plaintiff's argument in greater detail, *infra*.

8

was "caring for" is mother under the FMLA. (Pl.'s Resp. at 12.) In support of this proposition, Plaintiff cites two cases: *Scamihorn v. Gen. Truck Drivers*, 282 F.3d 1078 (9th Cir. 2002); and *Briones v. Genuine Parts Co.*, 225 F. Supp. 2d 711 (E.D.La. 2002).

In *Scamihorn*, a son took FMLA leave to care for his father who was suffering from depression following the death of the plaintiff's sister. *Scamihorn*, 282 F.3d at 1080-81. The son performed daily chores, such as shoveling snow, chopping wood, clearing the yard, and driving his father to counseling sessions. *Id.* at 1081. When responding to the defendant employer's objection that the son had not *cared for* his father, the Ninth Circuit said:

> Scamihorn does not claim to have personally attended any of [his father's] counseling sessions . . . , but he participated in the treatment through both his daily conversations with his father about [his sister] and the grief associated with her death and his constant presence in his father's life.

*Id.* at 1088.

In *Briones*, a father took FMLA leave to care for his three healthy children while his wife took care of their seriously ill son. The court said that the father "would have been entitled to FMLA leave had he been at the hospital caring for [his sick son] himself instead of using leave to facilitate [his wife's] fulfilling that role." *Briones*, 225 F. Supp. 2d. at 715. Therefore, the court concluded, the FMLA is broad enough to encompass the actions of the father in the scope of its protection. *Id.* at 716.

Plaintiff here relies on these cases to claim that, like the father in *Briones*, he was taking care of his healthy sister while his other family members were taking care of his sick mother. And, like the son in *Scamihorn*, he was providing psychological care for his mother even though he was not attending counseling sessions with her. But the facts of

9

this case are clearly distinguishable from *Scamihorn* and *Briones*. Unlike the son in *Scamihorn*, Plaintiff was, almost literally, half a world away from his mother; he did not "participate in [her] treatment" through "daily conversations" and by being a "constant presence in [her] life." *Scamihorn*, 282 F.3d at 1088. And, unlike the father in *Briones* who was *filling in* for his wife while she took care of their sick son, Plaintiff was *filling in* for his *brother*, while their older *sister* took care of their sick mother.

Moreover, the Ninth Circuit has had several opportunities to review and discuss its decision in *Scamihorn*. In *Gradilla v. Ruskin Mfg.*, 320 F.3d 951 (9th Cir. 2003), *opinion withdrawn, on stipulation of the parties, by Gradilla v. Ruskin Mfg.*, 328 F.3d 1107 (9th Cir. 2003), the court said:

> *Scamihorn* does not support the proposition that physical or psychological care by a spouse or parent is covered by the FMLA whenever the family member with a serious health condition chooses to travel for non-medical reasons.
>
> [If so], an employer would be required to grant family and medical leave whenever an employee has a spouse, parent, or child with a serious medical condition, and that family member requested the employee's assistance while traveling. The travel could be for unlimited personal reasons, to any destination, for lawful or unlawful purposes, for business or vacation. Courts would then have to decide, in each case, the worthiness of the family member's travel motives. Such a broad scope finds no support in the statute, regulations, or case law.

*Id.* at 958. If coverage for an employee traveling *with* the sick family member for non-medical reasons is not supported by the FMLA, coverage for an employee traveling *without* the sick family member for non-medical reasons would certainly not find support within the statute.

In *Tellis v. Alaska Airlines, Inc.*, 414 F.3d 1045 (9th Cir. 2005), the court reviewed several decisions, including *Scamihorn* and *Broines*, and said that "[c]ourts in this Circuit

10

and other jurisdictions that have concluded a particular activity has constituted 'caring for' a family member under the FMLA have done so only when the employee has been in close and continuing proximity to the ill family member." *Id.* at 1047. The court also reviewed a California state-court case, *Pang v. Beverly Hospital, Inc.*, 94 Cal. Rptr. 2d 643 (Cal. Ct. App. 2000), where a daughter took leave under the California Family Rights Act[5] to help her mother move from a two-story home to a one-level apartment:

> The [*Pang]* court stated:
>
> "Pang's admissions make clear that she was not there to directly, or even indirectly, provide or participate in medical care for her mother. Instead, she was there to help pack her mother's belongings and tell the movers where to place her mother's furniture. While Pang's presence may have provided her mother some degree of psychological comfort, this was merely a collateral benefit of activities not encompassed by the Commission's regulations."

*Tellis*, 414 F.3d, at 1047 (quoting *Pang*, 94 Cal. Rptr. at 643).

Plaintiff here was certainly not in "close and continuing proximity" to his mother. At most, traveling with his sister may have provided "some degree of psychological comfort," a mere "collateral benefit" of activities not otherwise encompassed in the FMLA. Based on Plaintiff's evidence detailed above, there is no issue of fact as to whether Plaintiff was engaged in a protected activity under the FLMA. Even viewing the evidence in a light most favorable to the Plaintiff, his claim —that he was "caring for" his mother by filling in for his ailing brother to fly 7,000 miles for a six-week family

---

[5]The California Family Rights Act ("CalFRA") is the California state law equivalent to the FMLA. *Pang*, 94 Cal. Rptr. 2d at 647 (citing *Marchisheck v. San Mateo County* 199 F.3d 1068, 1073 (9th Cir. 1999)). California law regarding CalFRA "has incorporated by reference the federal regulations interpreting the FMLA to the extent they are not inconsistent with CalFRA or other state laws." *Id.* (citing Cal. Admin. Code, tit.2, § 7297.10).

11

celebration with his healthy sister while his other sister actually took care of their mother— fails as a matter of law.  Plaintiff cannot show that he was engaged in a protected activity, and the court will grant Defendant's motion for summary judgment on this claim.

### B.  Interference Claim

The court will also grant Defendant's motion for summary judgment on the "interference" claim.  "The 'entitlement' or 'interference' theory is derived from the FMLA's creation of substantive rights. If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred." *Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (citing *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999)).  To establish a prima facie case for "interference" under the FMLA, Plaintiff must prove that:

> (1) [he] was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) [he] was entitled to leave under the FMLA, (4) [he] gave the employer notice of [his] intention to take leave, and (5) the employer denied the employee FMLA benefits to which [he] was entitled.

*Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)).

It is undisputed that Plaintiff is an eligible employee, that Defendant was an employer defined under the FMLA, that Plaintiff was potentially entitled to leave under the FLMA, and that Plaintiff gave Defendant notice of his intention to take leave.  It is also undisputed that Plaintiff applied for FMLA leave and was granted FMLA leave from July 3, 2008 to August 18, 2008.  Based on these facts, Plaintiff cannot claim that he was denied FMLA leave.

12

To the extent that Plaintiff asserts an "interference" claim based on his termination upon returning to work, the undisputed evidence reveals that Plaintiff was not eligible for the FMLA leave he requested because he did not, in fact, use the leave in order to care for his mother. For the reasons stated above, his wedding trip to Yemen is not a covered act under the FMLA. Defendant's motion will be granted on this claim as well.

## IV. CONCLUSION

The court holds, consistent with the statutory authority and case law precedent, that Plaintiff's travel was not covered by the FMLA and Defendant therefore did not violate the FMLA when terminating him.[6] Accordingly,

IT IS ORDERED that Defendant's "Motion for Summary Judgment" [Dkt. # 29] is GRANTED.

    S/Robert H. Cleland
    ROBERT H. CLELAND
    UNITED STATES DISTRICT JUDGE

Dated: March 15, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 15, 2010, by electronic and/or ordinary mail.

    S/Deborah J. Goltz
    Case Manager

---

[6] For the purpose of this motion, the court assumes without deciding the truth of Plaintiff's assertion concerning travel to Yemen for his sister's wedding, but expresses no view about the morality or nobility of Plaintiff's decision. It is not the province of this court to delve into any perceived religious, ethical, or familial responsibilities under circumstances presented to Plaintiff when his brother required surgery. Indeed, as stated by the Ninth Circuit, the FMLA does not require, nor does the court desire to "decide . . . the worthiness of the family member's travel motives." *Gradilla*, 320 F.3d at 958.

13